UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                 )
JAVIER REYES,                    )
                 Petitioner,     )
                                 )
         v.                      )        CIVIL ACTION
                                 )        NO. 18-40147-WGY
LISA A. MITCHELL,                )
Superintendent of the            )
Massachusetts Treatment Center,  )
                                 )
                 Respondent.     )
_____)


YOUNG, D.J.                               April 1, 2020

## MEMORANDUM & ORDER

## I.    INTRODUCTION

Javier Reyes ("Reyes"), a prisoner in state custody for sexually assaulting his girlfriend's seven-year-old daughter on different occasions, here petitions for a writ of habeas corpus pursuant to 25 U.S.C. § 2254.  Pet. Relief Conviction Sentence Person State Custody ("Petition"), ECF. No. 1; id. Ex. 4, Pet. App. Supp. Pet. Habeas Corpus Vol. I (of IV) ("App. Vol. I") 18-19, 75, ECF. No. 1-4.

Reyes alleges ineffective assistance of counsel in violation of the Sixth Amendment and violation of due process by the Massachusetts Appeals Court ("Appeals Court").  Petition, Mem. Supp. Pet. Habeas Corpus ("Pet'r's Mem.") 1-3, ECF No. 1-3.

## A.   Factual Background

In 2010, a Suffolk County grand jury indicted Reyes with the charges of rape of a child, assault with the intent to rape a child, and three counts of indecent assault and battery on a child under fourteen.  App. Vol. I 3-7.  Robert K. LeRoy ("LeRoy") was appointed as Reyes's counsel during his trial. Id. at 14.  LeRoy became aware that the victim ("M.R.") had a history of lying and had reported seeing ghosts.  Petition, Ex. 6, Pet. App. Supp. Pet. Habeas Corpus Vol. III (of IV) ("App. Vol. III") 64-65, ECF No. 1-6.  LeRoy's defense strategy during trial was to attack the credibility of M.R.[1]  App. Vol. III 65. At trial, the Commonwealth's expert testimony would indicate that conflicting reports of sexual assault made by children are consistent with post-attack trauma.  Petition, Ex. 5, Pet. App. Supp. Pet. Habeas Corpus Vol. II (of IV) ("App. Vol. II") 17-34, ECF. No. 1-5.  Preparing to rebut such expected testimony, LeRoy contacted Dr. Joseph Begany ("Dr. Begany") who agreed that delay, denial, and contradictory claims made by kids could be a consequence of post-attack trauma.  App. Vol. III 66.  For this reason, LeRoy decided not to use Dr. Begany's testimony during

---

[1] LeRoy attacked M.R.'s credibility by showing that she retracted a previous allegation of sexual abuse, her versions of the abuse were inconsistent, and that she wrote affectionate letters to Reyes even after disclosing the sexual abuse.  App. Vol. III 110-11.

trial.  Id.  Dr. Begany reached his conclusion without the
knowledge that M.R. had reported contact with ghosts on several
occasions.  Id. at 66, 157.  Following trial, a jury convicted
Reyes of rape of a child, assault with the intent to rape a
child, and indecent assault and battery on a child under
fourteen, but found Reyes not guilty of two additional counts of
indecent assault and battery.  App. Vol. I 18-19.

After his conviction, Reyes sought relief alleging
ineffective assistance of counsel both before the Massachusetts
Superior Court and then the Appeals Court.  Commonwealth v.
Reyes, 87 N.E.3d 116, 92 Mass. App. Ct. 1101, No. 16-P-1457,
2017 WL 3184424, at *1 (2017); App. Vol. III 212-20 ("Superior
Court Decision").  Both courts applied the state-law Saferian
test, see Commonwealth v. Saferian, 366 Mass. 89, 96, 315 N.E.2d
878, 883 (1974), to LeRoy's conduct and held that Leroy's
decisions were not "manifestly unreasonable."  Reyes, 2017 WL
3184424, at *3-4; Superior Court Decision 8.

Reyes now seeks a writ of habeas corpus alleging the same
grounds of ineffective assistance of counsel and further
asserting that the Appeals Court denied the relief he requested
by resting its opinion on inaccurate factual findings.  Pet'r's
Mem 36, 45.

**B.    Procedural History**

On April 2, 2014 Reyes first appealed his conviction, alleging ineffective assistance of counsel.  App. Vol. I 19.  On January 2, 2015 the Appeals Court granted him leave to file a motion for new trial before the Superior Court, which was duly filed on June 1, 2015.  Id. at 20; App. Vol. III 3-5.  The Superior Court allowed an evidentiary hearing to determine whether the alleged ineffective assistance of counsel claims had merit.  Id. at 79.  LeRoy and Dr. Begany testified during that hearing.  Id. at 79-211.  On June 28, 2016 the Superior Court denied the motion for a new trial.  Id. at 220.  Reyes appealed that decision and on July 27, 2017 the Appeals Court, in a consolidated appeal, affirmed the conviction and the denial of the motion for a new trial.  Reyes, 2017 WL 3184424, at *2.  Reyes petitioned for a rehearing from the Appeals Court, which was denied on August 3, 2017.  App. Vol. III 222.  Reyes sought Supreme Judicial Court review, which was also denied, without further comment, on September 28, 2017.  Commonwealth v. Reyes, 478 Mass. 1102, 94 N.E.3d 396 (2017).

On September 4, 2018 Reyes filed this petition of writ of habeas corpus.  Petition 16.  This Court heard argument on January 13, 2020, took the matter under advisement, and now DENIES Reyes' petition.

## II.  ANALYSIS

Claim I of Reyes' petition is based on the alleged
unreasonable application of the Saferian/Strickland test by the
Appeals Court when it analyzed LeRoy's failure to disclose at
trial that the victim had reported seeing ghosts on several
occasions.[2]  Pet'r's Mem. 36-39 (citing 28 U.S.C. § 2254(d)(1)).
Reyes also alleges that his counsel unconstitutionally failed to
disclose those ghost reports to Dr. Begany, and failed to call
him as an expert witness during trial.  Id. at 41.

In Claim II of the petition, Reyes argues that the Appeals
Court based its decision on unreasonable findings of facts.  Id.
at 45 (citing 28 U.S.C. § 2254(d)(2)).  According to him, the
Appeals Court inaccurately indicated that **two** expert witnesses
agreed that ghosts are like imaginary friends, and that LeRoy
strategically decided not to call Dr. Begany supposedly in
response to the Commonwealth's expert testimony about ghosts --
none of which actually occurred at trial.  Id. at 45-51.

The Massachusetts Attorney General ("Attorney General" or
"Commonwealth") asserts that the Superior Court and the Appeals
Court decisions are not objectively unreasonable.  Resp't's Mem.
Opp'n Pet. ("Resp't's Opp'n") 1, ECF No. 20.  According to the

---

[2] Specifically, Reyes points out that M.R. said that she saw
a ghost prior to meeting Reyes, that a ghost committed the rape
and that the ghost caused her to report the rape.  Pet'r's Mem.
36, 37; cf. Resp't's Mem 3, 13.

Commonwealth, the Appeals Court decision was not "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), even were there were "one or more factual inaccuracies" in that decision.[3]  Id. at 21.  The Commonwealth further argues that even if there was an unreasonable determination of the facts, Reyes cannot prove that there has been a violation of federal law.  Id. at 23.  It also contends that Reyes failed to sign the petition, which itself warrants dismissal.  Id. at 23-24.

This Court will focus first on the accuracy of the legal standards employed by the Commonwealth courts and second on the factual inaccuracies in the Appeals Court's recitative of the facts and the legal effects thereof.

A.    **Standard of Review**

Federal habeas corpus relief can be awarded only in very limited and specific circumstances.  28 U.S.C. § 2254.  Section 2254(d)(1) provides that habeas relief ought be granted if the state court decision adjudicated on the merits was "contrary to, or involved an unreasonable application of, clearly established

---

[3] As will be seen, it is deeply troubling that the Massachusetts Appeals Court appears to have issued an opinion which, in material particulars, gets the facts wrong.  This Court suggested to the Commonwealth at the habeas hearing that perhaps it might join with the petitioner and seek a re-hearing at which the admitted "factual inaccuracies" might be cleared up.  The Attorney General demurred.

Federal Law, as determined by the Supreme Court of the United States."  Neither Reyes nor the Commonwealth disputes that the Appeals Court decided the case on the merits.

Reyes, however, does contend that the Appeals Court's decision involved an unreasonable application of federal law, viz., the Strickland test.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Pet'r's Mem. 1-2.  Unreasonable application of clearly established federal law occurs when the state court properly identifies the governing legal principles, but nevertheless:

> (i) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply. . . .  To be unreasonable, the state court's application of existing legal principles must be more than merely erroneous or incorrect.

Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (citing L'Abbe v. DiPaolo, 311 F. 3d 93, 96 (1st Cir. 2002); Williams v. Taylor, 529 U.S. 362, 407, 411 (2000)).

Reyes also contends that the Appeals Court decision was based on an unreasonable determination of the facts.  Pet'r's Mem. 1-2 (citing 28 U.S.C. § 2254(d)(2)).[4]  See generally Lucien, 871 F.3d at 127 n.4.

---

[4] According to 28 U.S.C. § 2254(e)(1), the factual determinations made by the state court are to be taken as

The First Circuit has yet to define the specific situations
where section 2254(d)(2) applies; however, the Ninth Circuit has
done so in a manner that this Court believes is reasonable and
therefore adopts.  The unreasonable determination clause of
section 2254(d)(2) applies to claims where the petitioner
alleges that: (i) "the finding is unsupported by sufficient
evidence," (ii) "the process employed by the state court is
defective," or (iii) "no finding was made by the state court at
all."  <u>Taylor</u> v. <u>Maddox</u>, 366 F.3d 992, 999 (9th Cir. 2004),
<u>overruled on other grounds</u>, <u>Murray</u> v. <u>Schriro</u>, 745 F.3d 984,
999-1000 (9th Cir. 2014)).  "[W]here the state courts plainly
misapprehend or misstate the record in making their findings,
and the misapprehension goes to a material factual issue that is
central to petitioner's claim, that misapprehension can fatally
undermine the fact-finding process, rendering the resulting
factual finding unreasonable."  <u>Id.</u> at 1001.  It is not enough
that the court's factual determinations are erroneous; they must

---

correct and it is the petitioner who bears the burden of proving
the contrary "by clear and convincing evidence."  The First
Circuit has recognized that the precedent is not clear regarding
the relationship between sections 2254(d)(2) and 2254(e)(1).
<u>See</u> <u>Lucien</u> v. <u>Spencer</u>, 871 F.3d 117, 127 n.4 (1st Cir. 2017).
As in the First Circuit cases, this Court need not decide the
issue because following either section 2254(d)(2) or 2254(e)(1)
it would conclude that the Appeals Court reached an unreasonable
factual determination.  <u>See</u> <u>infra</u> II.C.

be unreasonable.  Smith v. Dickhaut, 836 F.3d 97, 108 (1st Cir. 2016).

Even if the federal court finds that there was an unreasonable determination of fact by the state court, the writ of habeas corpus may not be granted unless the petitioner demonstrates a violation of federal law, Swarthout v. Cooke, 562 U.S. 216, 219 (2011), which in this case is Reyes' claim of a Sixth Amendment violation.[5]

## 1.   Federal Strickland Standard for Ineffective Assistance of Counsel Claims

It is well established that a court evaluating a claim for ineffective assistance of counsel must apply a two prong test: (i) whether counsel's performance was so deficient, and the errors so serious, that his conduct "fell below an objective standard of reasonableness," according to the circumstances, Strickland, 466 U.S. at 688; and, (ii) whether the deficient performance of counsel was so prejudicial as to "deprive the defendant of a fair trial, a trial whose result is reliable," id. at 687.  The defendant bears the burden of proof for both

---

[5] Reyes also suggests, without argument or citation to authority, that the Appeals Court's factual mistakes amount to a denial of his Fourteenth Amendment right to due process. Pet'r's Mem. 2 n.3 (citing 28 U.S.C. § 2254(d)(2)).  The Court can discern no colorable violation of due process here.  Since the factual errors in the Appeals Court's decision were confined to its discussion of Reyes' ineffective assistance of counsel claim, the Court construes his due process argument as a repackaged Sixth Amendment claim and analyzes it accordingly.

elements, and courts must be highly deferential as to the counsel's strategies during trial, which carry the strong presumption that the conduct falls within the range of "reasonable professional assistance." Id. at 689, 690-91.

In scrutinizing a claim of ineffective assistance of counsel, therefore, courts must analyze whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," while prejudice requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687, 694).

## 2.  Massachusetts' Saferian Standard for Ineffective Assistance of Counsel Claims

Massachusetts courts apply the Saferian standard when analyzing an ineffective assistance of counsel claim. Saferian, 366 Mass. at 96.  A petitioner seeking habeas corpus relief in a Massachusetts court must demonstrate: (i) that "there has been serious incompetency, inefficiency, or inattention of counsel," and (ii) that the counsel's behavior "likely deprived the defendant of an otherwise available, substantial ground of defence." Id.; see also Malone v. Clarke, 536 F.3d 54, 63 n.7

(1st Cir. 2008) (citing Commonwealth v. Sargent, 449 Mass. 576,

870 N.E.2d 602, 610 (2007)).

The Saferian and Strickland standards do not use the same

"phraseology" but for federal habeas corpus purposes "Saferian

is a functional equivalent of Strickland." Ouber v. Guarino,

293 F.3d 19, 32 (1st Cir. 2002) (citing Scarpa v. Dubois, 38

F.3d 1, 7-8 (1st Cir. 1994)); see also Stephens v. Hall, 294

F.3d 210, 215 (1st Cir. 2002).

### 3.    Doubly Deferential Standard in Federal Habeas Corpus Review

On direct review under Strickland, a court would analyze

whether the criminal defendant showed that the trial counsel's

performance was deficient and prejudicial.  466 U.S. at 687.

The standard that a federal court applies when analyzing a

petitioner's claim that a state court has unreasonably applied

the Strickland principles, however, is "doubly deferential":

> First, the 'pivotal question' in a federal collateral
> attack under Strickland is not 'whether defense
> counsel's performance fell below Strickland's
> standard,' but 'whether the state court's application
> of the Strickland standard was unreasonable,' that is,
> whether 'fairminded jurists' would all agree that the
> decision was unreasonable . . . . [and] Second, the
> Strickland standard is a very general one, so that
> state courts have considerable leeway in applying it
> to individual cases.

Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011) (quoting

Harrington, 562 U.S. at 101 (further citation omitted).  This

"doubly deferential standard of review . . . gives both the

state court and the defense attorney the benefit of the doubt."
Jaynes v. Mitchell, 824 F.3d 187, 196 (1st Cir. 2016) (citing
Pena v. Dickhaut, 736 F.3d 600, 606 (1st Cir. 2013)).

**B.   Propriety of Appeals Court's Application of the Strickland Test (Claim I)**

Reyes argues that the Appeals Court's decision was
unreasonable in concluding that LeRoy was reasonable when he
decided: (i) not to impeach M.R. with the ghost reports, (ii)
not to tell Dr. Begany about the ghost reports, and (iii) not to
call Dr. Begany as an expert witness during trial.  Pet'r's Mem.
36-45.  The Commonwealth contends that, under the doubly
deferential standard, the Massachusetts court decisions must be
upheld because they are not an objectively unreasonable
application of the appropriate standard of review.  Resp't's
Opp'n 13-20.

**1.   LeRoy's Decision Not to Impeach M.R. Using the Ghost Reports**

The Appeals Court concluded that LeRoy's tactic of focusing
his cross-examination on the various inconsistencies in M.R.'s
testimony, while omitting mention of her reported ghost
sightings, was not unreasonable.  Reyes, 2017 WL 3184424, at *4.
Reyes alleges that it was legally unreasonable to conclude that
LeRoy's decision not to elicit testimony about ghosts was not
deficient, Pet'r's Mem. 39, and it was prejudicial because
eliciting that information would have sown doubt in the minds of

the jurors.[6]  Id. at 43.  The Commonwealth argues that the

Appeals Court's conclusion was not unreasonable because LeRoy

could reasonably have decided that the ghost reports would not

have added much to his strategy to focus on impeaching M.R. with

her inconsistent testimony.  Resp't's Opp'n 18.  The

Commonwealth further argues that LeRoy's strategy was not

prejudicial because there was no substantial possibility of a

different outcome even had LeRoy elicited testimony about the

ghosts.  Id.

It was reasonable for the Appeals Court to reach its

conclusion because, as it reasoned, an effective defense does

not require the exhaustion of each and every method of

impeachment.  Reyes, 2017 WL 3184424, at *3 (citing Commonwealth

v. Duran, 435 Mass. 97, 55 N.E.2d 260, 268 (2001)).  Indeed,

---

[6] According to Reyes, he would have not been convicted if
LeRoy would have impeached the credibility of M.R. with the
following statements, Pet'r's Mem. 20-21:
    (i) M.R.'s revelation to an investigator for the Child
Protection Bureau that a little girl was haunting her and tried
to hurt her (nonexistent) little sister, App. Vol. III 45;
    (ii) The claim of Reyes and Angelique Pina -- Reyes's
sister -- to the Sexual Assault Unit Investigator, that M.R.'s
story was inconsistent since it changed from "saying it was
rape, to she does not know, to she could have been dreaming . .
. [and] is now seeing ghosts," id. at 47;
    (iii) M.R.'s discussion with her school counselor, Rachel
Jarudi, regarding ghost friends, spirits, and ghosts trying to
hurt her, id. at 59-61; and
    (iv) Angelique Pina's testimony before the grand jury that
"[M.R.] didn't know [M.R.] thought it was ghost, it could have
been a ghost or something," id. at 63.

scattershot cross examination is frequently less effective than a targeted approach.  See William Owen ("Bill") James, Jr., Are Younger's Ten Commandments of Cross Still Good Law in Today's Courtroom?, 42 Champion 34, 36 (Dec. 2018) (discussing Professor Irving Younger's view of cross-examination as "a commando raid" that "is only effective if the jury remembers the questions asked," and so should be "limited to two or three concise and sharp points"); see also Stephen D. Easton, Irving Younger's Ten Commandments of Cross-Examination: A Refresher Course, with Additional Suggestions, 26 Am. J. Trial Advoc. 277, 283 (2002) ("[A]n ideal cross-examination should support three, two, or (best of all) one point(s) that you will use in summation to argue that the witness is not a reliable source of information. . . .  [Jurors] have a limited capacity to learn and retain information through listening.  It is easy to exceed this capacity by asking too many questions, or by asking questions about too many topics.").  LeRoy himself reasonably explained that he decided not to elicit any testimony in this regard because he sought a better strategy to impeach the credibility of M.R. by depicting her as "pathological liar."  App. Vol. III 95-98.  Although not completely satisfied by the result of the case, LeRoy noted that his mendacity strategy was effective enough to acquit Reyes of two of the charges.  Id. at 128.

[14]

This Court defers to the Appeals Court's analysis of LeRoy's strategy and his decision not to elicit this information during trial.  A fair-minded jurist could conclude, as did the Appeals Court, that LeRoy's strategy did not place his representation "outside the wide range of professionally competent assistance."  See Strickland, 466 U.S. at 690.

### 2.   LeRoy's Decision Not to Mention the Ghost Reports to Dr. Begany

Reyes alleges that the Appeals Court unreasonably applied Strickland when it ruled that LeRoy was not unreasonable in declining to tell Dr. Begany about M.R.'s statements referring to ghosts.  Pet'r's Mem. 41.  Reyes claims that LeRoy's decision was prejudicial because Dr. Begany could have testified as to the ghost sightings and materially undermined M.R.'s credibility.  Id. at 40, 43-45.  The Commonwealth argues that this decision was not unreasonable or prejudicial because even in hindsight, Dr. Begany "still could not provide an opinion as to what caused the victim to report alleged sexual abuse." Resp't's Opp'n 20.

The Appeals Court did not address this issue specifically. This Court thus "look[s] through" that decision to the Superior Court decision on the motion for a new trial.  Wilson v. Sellers, 138 S. Ct. 1188, 1193-94 (2018).  The Superior Court acknowledged that it was "perhaps troubling" that LeRoy omitted

telling Dr. Begany that M.R. saw ghosts.  Superior Court
Decision 9.  The Superior Court reasoned it was unlikely,
however, that the ghost reports would have altered Dr. Begany's
testimony, and even with such knowledge Dr. Begany "[could not]
provide an opinion regarding the cause of the victim's claims."
Id.

A reasonable attorney would have at least mentioned to his
own potential expert witness all the facts that could affect the
expert's testimony; otherwise counsel is not able strategically
to decide whether the expert testimony would have bolstered its
own defense theory.  See, e.g., Holsomback v. White, 133 F.3d
1382, 1388 (11th Cir. 1998) (deeming counsel ineffective for
being unaware that testimony would have helped his case when he
never actually spoke with the expert witness); see also Anderson
v. Johnson, 338 F.3d 382, 392 (5th Cir. 2003) (stating that
counsel had not made a "strategic choice against pursuing a
certain line of investigation when [he] has not yet obtained the
facts on which such a decision could be made" (quoting United
States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989))); Samuel R.
Gross, Expert Evidence, 1991 Wis. L. Rev. 1113, 1139 (1991)
("[T]he preparation of expert testimony often involves extensive
detailed cooperative work by the expert and the attorneys who
hired her . . ." and the expert "is dependent on the lawyer for
the preparation that will make her success possible."); James E.

Daniels, Managing Litigation Experts, 70 ABA J., Dec. 1984, at
64-66 ("Effective communication with experts has several
objectives: to provide enough information so that the expert
will be well-prepared, but to avoid providing materials that
would open the door to otherwise unavailable lines of cross-
examination; to give the expert leeway to develop ideas and
conclusions with the requisite independence, but to provide
sufficient guidance so that helpful opinions are reached; to
make the expert a colleague while at the same time preserving
objectivity.").  Although it was unreasonable for LeRoy to make
some sort of "strategic" decision not to tell Dr. Begany about
M.R.'s ghost reports, this decision was not prejudicial.  There
is not a reasonable probability that, had Dr. Begany been
properly apprised of the ghost reports, he would have testified
in a way that may have altered the trial's outcome.  See
Harrington, 562 U.S. at 104.

Even after belatedly being told of the ghost sightings, Dr.
Begany was not sure about the motivations of M.R. in making the
statements regarding ghosts and he indicated numerous potential
causes: seizure disorder, untreated diabetes, central nervous
system infection, head injury, trauma, or prior abuse.  App.
Vol. III 164.  Dr. Begany also stated that memory is
inconsistent and recalled "slightly differently every time," and
this may explain different and partial disclosures.  Id. at 167.

[17]

It is not reasonably probable that his testimony would have created a reasonable doubt that Reyes was guilty.  See Lucien v. Spencer, No. 07-11338, 2015 U.S. Dist. LEXIS 134154, at *90-98 (D. Mass. Sept. 30, 2015) (Wolf, J.), aff'd, 871 F.3d 117 (1st Cir. 2017).  M.R.'s inconsistent reports and ghost sighting were possibly related to her age and the alleged sexual trauma.  See App. Vol. II 20-22.  There was sufficient additional evidence suggesting that M.R. was lying, and still the jury found Reyes guilty on some counts.  Therefore, the result of the trial would have been the same even had LeRoy properly informed Dr. Begany of the reported ghost sightings.

### 3.    LeRoy's Decision Not to Call an Expert Witness

Reyes alleges that the Appeals Court applied Strickland in an unreasonable manner when it determined that LeRoy reasonably decided against calling an expert to rebut the Commonwealth's experts.  Pet'r's Mem. 39-42.  The Commonwealth claims that the Appeals Court decision was reasonable because "any potential benefit" derived from Dr. Begany's testimony "was minimal" since "there was other evidence that weighed against the victim's credibility."  Resp't's Opp'n 19.  The Appeals Court concluded that LeRoy reasonably decided not to call Dr. Begany to counter the Commonwealth's expert testimony because in Dr. Begany's opinion "the victim's ghost sightings [were] not unusual, and

are often spurred by trauma such as sexual assault." <u>Reyes</u>,
2017 WL 3184424, at *2.

It was reasonable for the Appeals Court to reach that
conclusion.  Had Dr. Begany testified at trial, he likely would
have "bolstered" the testimony of the Commonwealth's witnesses.
App. Vol. III 104.  LeRoy's strategy focused on demonstrating
that M.R. was, allegedly, a pathological liar.  <u>Id.</u> at 96.  The
Appeals Court reasoned that Dr. Begany would potentially have
undercut the defense's theory because he would have confirmed
that children normally lie when exposed to traumatic
experiences.  <u>Reyes</u>, 2017 WL 3184424, at *3.  Even after the
trial, when Dr. Begany became aware of the ghost reports, he
asserted that it is common for children to have sensory
experiences.  App. Vol. III. 179.[7]

---

[7] Reyes repeatedly contends that Dr. Begany never reached
the conclusion that ghosts are like imaginary friends.  Pet'r's
Mem. 29, 48.  The transcripts from the evidentiary hearing on
the motion for a new trial allow the inference that Dr. Begany
concluded that a perceptual experience -- like ghosts or
imaginary friends -- is not uncommon among kids.  App. Vol. III
152-85.  Particularly, Dr. Begany indicated:

> If a child or somebody brought a child to me who is
> saying these things, I would have a lot of discussion
> about the actual experience. What did you see? When do
> you see it? What - under what circumstances do you see
> it? Because . . . you mentioned imaginary friends.
> That is a very normal experience with children, so it
> -- there would have to be some inquiry as to the
> extent to which this was beyond really what -- what's
> normal and -- or, you know, inquiry along the lines of
> -- of differentiating or determining, you know, what

A fair-minded jurist could have concluded, as did the
Appeals Court, that LeRoy had performed sufficiently by
declining to call Dr. Begany as an expert witness.  See Lucien,
2015 U.S. Dist. LEXIS 134154, at *84 ("When a potential
witness's testimony presents a 'mixed bag' that might have a
'possible negative impact' on the defendant's case, the decision
not to call that witness is unlikely to be 'patently
unreasonable.'") (citations omitted).

For these reasons, this Court concludes that the Appeals
Court reasonably applied the Strickland test in concluding that
LeRoy's performance met constitutional standards, even if he did
not impeach M.R. with the ghost stories and did not call an

---

sort of, you know, normal and high normal and what's -
- what might be exaggerated for a particular purpose
and what might really be a genuine sort of perceptual
experience that may be more indicative of mental
health problems.

Id. at 160-61.  He further explained:

Q: And it's fair to say that you also testified that
it is not unusual, and in fact it's a very normal,
experience for children to have what we all use in
layman's terms to call imaginary friends or --
A [Dr. Begany]: Yeah, absolutely.
Q: -- or experiences where they talk to an individual
others do not see or state that they are or state that
they're having a conversation of such?
A [Dr. Begany]: Yes. I should clarify that they're
usually friendly.
Q: Usually.
A [Dr. Begany]: I have never come across a child who
had a bully for a - an imaginary partner, so -.

Id. at 179.

expert witness at trial.  While LeRoy unreasonably omitted the
ghost stories in private communications with Dr. Begany, the
Superior Court properly concluded under <u>Strickland</u>'s second
prong that this failure by the defense attorney was not
prejudicial.  Therefore, this Court DENIES Reyes's first claim
under 28 U.S.C. § 2254(d)(1).  All this is rather academic, of
course, since -- as discussed in the next section -- the Appeals
Court botched the facts, <u>i.e.</u>, appears to have assumed "facts"
not in evidence.

### C.  Appeals Court Factual Determinations (Claim II)

Reyes argues that the Appeals Court decision was based on
an "unreasonable factual findings in light of evidence
produced."  Pet'r's Mem. 45.  The Commonwealth replies that the
decision of the Appeals Court was not <u>based on</u> an "unreasonable
determination of the facts," even if there were "one or more
factual inaccuracies."  Resp't's Opp'n 21 (citing 28 U.S.C. §
2254(d)(2)).[8]

---

[8] The Commonwealth also argues that section 2254(d)(2) does
not necessarily apply in this case.  Resp't's Opp'n. 21-22.
That position lacks merit.  The First Circuit in <u>Ouber</u>, 293 F.3d
at 27, indicated that section 2254(d)(2) was of limited utility
in an inquiry involving mixed questions of law and fact.
(stating that section 2254(d)(2) "applies only to determinations
of 'basic, primary, or historical facts'" and "mixed fact/law
conclusion," such as the performance and prejudice components of
the <u>Strickland</u> test are "more appropriately analyzed under the
'unreasonable application' prong of section 2254(d)(1)").  When
the analysis relies on factual mistakes made by the state
courts, however, section 2254(d)(2) does guide the inquiry.  <u>See</u>

The Appeals Court misunderstood the facts and reached unreasonable factual findings when it alluded to expert witnesses, alleged agreements between witnesses, and strategic decision based on testimonies nowhere in the record.  Reyes has complied with his burden, and it is clear that the Appeals Court decision was factually unreasonable.  See Taylor, 366 F.3d at 1001.

This Court reviews, de novo, whether Reyes's Sixth Amendment right was violated by LeRoy's decision not to impeach M.R. using her reported ghost sightings or to call an expert witness.  See Panetti, 551 U.S. at 954 (considering "petitioner's claim on the merits and without deferring to the state court's finding of competency" because "the factfinding procedures upon which the [state] court relied were 'not adequate for reaching reasonably correct results' or, at a minimum, resulted in a process that appeared to be 'seriously inadequate for the ascertainment of the truth'" (quoting Ford v. Wainwright, 477 U.S. 399, 423-24 (1986)(Powell, J., concurring in part and concurring in the judgment)).

---

Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (noting that section 2254(d)(2) allows a federal court to overturn a state court decision if its factual basis was "objectively unreasonable in light of the evidence presented in the state-court proceeding").

1.   **The Appeals Court Relied on Expert Testimony that Did Not Occur at Trial**

When analyzing whether LeRoy's assistance was ineffective in not using the reports of ghosts to impeach M.R., the Appeals Court stated:

> The victim was a young child and <u>two experts</u>, including the defense expert that had testified at the motion hearing, agreed that <u>ghost sightings, or, as commonly known 'imaginary friends,'</u> are not a unique occurrence for a child the victim's age. Moreover, <u>both experts</u> also indicated that trauma, such as sexual abuse, could spur a child to conjure these imaginary images. In this case, the claims that the child interacted with ghosts preceded her report of rape by the defendant; however, it was only after the rape that the ghosts became aggressive towards the child. <u>Such evidence would have served to bolster the Commonwealth's theory</u> that a rape had occurred and undercut the defendant's theory that she was lying. This is particularly true here, where the child claimed to have enjoyed a similar, friendly relationship with the defendant up until the rape.

<u>Reyes</u>, 2017 WL 3184424, at *1 (emphases added).

The record shows that neither of the Commonwealth's expert witnesses testified at trial about M.R.'s ghost stories, nor did they testify to a link between ghosts and imaginary friends. App. Vol. I 24-248; App. Vol II 3-280.  One expert, Dr. Stephanie Block, testified regarding delayed disclosure, <u>id.</u> at 6-34, while the other expert, Dr. Alice Newton, testified as to sexual development and physical examination in sexual assault cases, <u>id.</u> at 37-60.  The Appeals Court apparently assumed that Dr. Begany agreed with some other expert that ghost reports made

by kids are not unusual after sexual assault.  <u>Reyes</u>, 2017 WL
3184424, at *1.  Had the Appeals Court correctly understood that
only one expert (Dr. Begany) testified -- and that one post-
trial -- about ghost stories, then it could not reasonably have
concluded that Dr. Begany had acquiesced to the idea that
reports of ghosts are a consequence of sexual abuse.  The
reliance on this factual error critical to its conclusion
renders the Appeals Court decision unreasonable.  <u>See</u> <u>Wiggins</u> v.
<u>Smith</u>, 539 U.S. 510, 528 (2003) ("This partial reliance on an
erroneous factual finding further highlights the
unreasonableness of the state court's decision.").

    Nevertheless, the Appeals Court reasonably concluded that
Dr. Begany linked imaginary friends to ghosts.  After the trial,
Dr. Begany did acknowledge that M.R.'s references to "having a
sensory experience that was primarily visual, also auditory,"
could be understood as similar to an imaginary friend and that
such perceptions are "a very normal experience with children."
App. Vol. III 160-61.  <u>See</u> <u>supra</u> note 6.

    The Appeals Court also found that Dr. Begany and a state
witness agreed that ghost stories can be a consequence of sexual
assault trauma.  That never happened.  The Appeals Court simply
erred in concluding that Dr. Begany and a Commonwealth expert
agreed on the analysis of M.R.'s ghost sightings.  None of the
Commonwealth's witnesses ever mentioned that a ghost visitation

or imaginary friend can be caused by sexual assault trauma.  The
only expert witness who testified to the ghost stories -- and
only post-trial -- was Dr. Begany.  He simply could not have
agreed with a Commonwealth witness on this matter as his ghost
testimony covered totally new ground.  Had the Appeals Court
correctly understood that only Dr. Begany testified as to the
ghost reports, it could not reasonably have concluded that there
was agreement between the defense and the Commonwealth's theory
of the case.  The reliance on this factual error -- critical to
its conclusion -- makes the Appeals Court decision unreasonable.
See Wiggins, 539 U.S. at 528.

> **D.   On De Novo Review, LeRoy's Conduct Did Not Violate
> Reyes's Sixth Amendment Right**

As the Appeals Court unreasonably read the record before it
and based its decision on erroneous factual determinations, this
Court cannot therefore defer to the Appeals Court in its
analysis of whether LeRoy's assistance was effective.   Id.

This Court freshly analyzes Reyes's claims under the
Strickland standard and rules that LeRoy's assistance was not
ineffective.

> **1.   Reasonableness of LeRoy's Performance**

This Court's de novo analysis centers on whether it was
reasonable for LeRoy not to impeach M.R. with the ghost reports
and not to call Dr. Begany as an expert witness.

### a.    It Was Reasonable Not to Use the Ghost Reports to Impeach M.R.

LeRoy decided not to use, as a method of impeachment, the stories that M.R. had contacts with ghosts.  This decision was not unreasonable.  When the alleged error is failure to impeach a Commonwealth witness, the court needs to assess "the strength of the prosecution's case, and the effectiveness of the defense absent the impeachment evidence." Malone, 536 F.3d at 64 (quoting Stephens, 294 F.3d at 218).  After that analysis, the court must determine the potential impact of the impeachment evidence "in undermining the credibility of the witness's testimony." Id. (quoting Stephens, 294 F.3d at 218).

The prosecution's case was strong.  The Commonwealth presented Racelle Jarudi Fitek, the outpatient clinician at M.R.'s elementary school, who testified as to the reactions she observed when M.R. was relating to her the sexual assault events, App. Vol. I. 223, and the fear that M.R. had of being taken away from her home if she disclosed all the incidents of sexual abuse,[9] id. at 228.  Detective Lanita Cullinane, of the Boston Police Department's Crimes Against Children Unit,

---

[9] The jurors were instructed that Jarudi's testimony could not be considered "as evidence that the assaults in fact occurred. The purpose of this complaint evidence is to assist you in your assessment of the credibility and reliability of the complainant, [M.R.'s] testimony, here in court."  App. Vol. I 215.

provided information regarding the reconstruction of the floor plan and the letters written by M.R. and directed to Reyes. Id. at 231-38. As expert witnesses, the Commonwealth called Stephanie Block, Ph.D., and Alice Newton, M.D. Dr. Block testified that delayed disclosure of sexual assault is very common among child victims of sexual abuse, as well as to the reasons why this behavior occurs. App. Vol. II 19, 21–23. Dr. Newton testified that absence of physical evidence (such as bruising or injury) in sexual assault cases of children M.R.'s age is not indicative of lack of sexual assault. Id. at 51.

LeRoy's defense was effective even without mentioning the ghost reports as impeachment evidence. LeRoy cross-examined Racelle Jarudi Fitek to emphasize that M.R. could have told her all about the sexual abuse situations without fear of being taken away from her home, and even with this information, M.R.'s stories were inconsistent. App. Vol. I 228-30. LeRoy also cross-examined Dr. Block regarding false reports and the ability of children to communicate, suggesting that there was no reason for M.R. not to disclose the sexual assault in absence of threats. App. Vol. II 28-34. As to Dr. Newton's cross-examination, LeRoy sought to elicit testimony that physical examinations lack value, because in cases where the perpetrator has confessed only 40% of physical exams show signs of trauma, and that spermal DNA evidence could have been collected from

M.R.'s pajamas or bedsheets and would have been useful to determine whether a sexual act had occurred in this case.  App. Vol. II 56-58.  LeRoy also affirmatively presented the testimony of .R.'s brother, id. at 61; Angelique Pina, Reyes' sister who had previously lived with the family, id. at 77; M.R.'s mother, id. at 96; and Reyes himself, id. at 156.

The ghost reports likely would not have been decisive for the purpose of undermining the credibility of M.R.'s testimony. The verdict depended upon the credibility of M.R.,[10] who told inconsistent stories regarding different accusations of sexual assault.  During trial, LeRoy used these different reports to show that M.R.'s story was inconsistent, and in his closing argument he emphasized why the jurors ought not believe M.R.'s testimony.  App. Vol. II 256-670.[11]  The victim's credibility was

---

[10] There was no physical evidence in this case.  One expert, Dr. Newton, testified that such evidence is not necessary to establish that sexual assault has occurred.  App. Vol. II. 51.

[11]  LeRoy stressed that the Commonwealth's expert witnesses were not useful because they concluded that "[a]ny time a little girl says anything about [being] sexually molested whether she takes it back or not, it's to be believed."  App. Vol. II 258.
LeRoy also pointed out to the jurors several inconsistencies in M.R.'s testimony, asserting that she was lying because: (i) "[s]he gave a different story than she had given the day before when she told Angelique Pina . . . that he raped her anally, she told Ms. Fitek that this had happened on several occasions. So right away the story is changing," id. at 259; (ii) "[a]fter all of this she doesn't remember Javier's last name. She remembers that he read her Charlotte's Web one night, but she can't remember after living with him for three years, de [facto] stepfather, she can't remember his last name,"

a major issue during trial and the Commonwealth's attorney had to rehabilitate M.R.'s credibility by asserting that "there is simply no reason why [M.R.] would come in here and make up a story."  Id. at 271.  The Commonwealth's attorney additionally gave the jurors explanations of why M.R. had different stories and why she ought be believed.  Id. at 275 (observing that the reason why M.R.'s story was inconsistent was because M.R. was worried about "[w]hat would happen to her?").

As a result of LeRoy's efforts during trial, Reyes was acquitted of two charges of indecent assault and battery on a child under the age of fourteen.  App. Vol. I 9, 18.  When asked during the post-trial hearing why he omitted the ghost claims, LeRoy replied: "I thought it was less significant than -- and I wanted to highlight the claims against Mr. Reyes. The lies against Mr. Reyes I thought were far more valuable to the defense than the ghosts."  App. Vol. III 98.  This was a trial strategy, to disregard a less effective defense and focus on a

---

id. at 261; (iii) "[She] has an inability to take a story and stick to it," id. at 261; (iv) "Javier Reyes came back from Florida in 2007. He wasn't even living in the house when she was in the first grade. But she testified that Javier came in and tried to pull her pants down," id. at 262; (v) "These are letters from someone who has made allegations of being sexually abused.  And when she's asked about it on cross-examination: My mother missed him."  Id. at 264.  Finally, LeRoy remarked that the evidence showed that M.R. "was a confused and troubled little girl, and I think you saw that very, very much in evidence when she testified."  Id. at 269.

defense that can be supported with more evidence.  See Hensley, 755 F.3d at 737 ("The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." (quoting Horton v. Allen, 370 F.3d 75, 86 (1st Cir. 2004))).

The record indicates that LeRoy was diligent by impeaching M.R. on multiple occasions, and therefore his performance did not "f[a]ll below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see also Malone, 536 F.3d at 67 (concluding that potential value of impeachment evidence "would not have significantly undermined [the victim's] credibility" because "defense counsel did not fail to impeach [the victim] [a]nd the jury was repeatedly presented with [the victim's] inconsistent statements, inconsistencies that the prosecution acknowledged.  The jury nevertheless found [the victim] credible regarding the allegations of sexual abuse.").

LeRoy's decision was reasonable and therefore not in violation of Reyes's Sixth Amendment right.[12]

---

[12] A court can decide in which order it will analyze the two Strickland prongs and if the court finds that one of the two prongs are not met, then the claim for ineffective assistance of counsel will fail.  See Gonzalez-Soberal v. United States, 244 F.3d 273, 277-78 (1st Cir. 2001) (citing Strickland, 466 U.S. at 697).
    Even assuming, arguendo, that it was unreasonable for LeRoy not to impeach M.R. with the ghost reports, that decision was not prejudicial.  The ghost sightings could have reinforced the theory that M.R. was lying, but LeRoy was already actively

###           b.      It Was Unreasonable for LeRoy Not to
                      Disclose the Ghost Reports to Dr. Begany

It was unreasonable for LeRoy not to inform his own

potential expert witness of M.R.'s ghost sighting because Dr.

Begany then lacked the necessary information to render a

reliable opinion, and thus LeRoy could not ascertain whether he

should call him to the stand.

It was an unreasonable mistake for LeRoy to omit telling

important information regarding M.R.'s reports of supernatural

events to his own potential witness, and LeRoy did not have a

reasonable explanation for such omission.  When LeRoy explained

why he did not mention the ghost sightings to Dr. Begany he

insisted that such claims were less concerning than his

mendacity defense, without further explanation.  App. Vol. III

98, 105.[13]  These explanations by LeRoy do not suggest strategic

---

pursuing this strategy.  See, e.g., App. Vol. I 153-75 (vague
recollection of the facts); id. at 160-82 (inconsistencies and
recanting versions of the sexual conduct); id. at 169, 197
(affectionate letters to Reyes even after he sexually assaulted
M.R.); id. at 209-13 (influences that may have affected M.R.'s
testimony).  Even had LeRoy mentioned the ghost sightings, this
line of defense would not have created a reasonable doubt as to
Reyes's innocence.  There is no degree of certainty that the
verdict would have been different had LeRoy impeached M.R. with
the reports of ghost sightings.
    [13] LeRoy specifically testified:

    I was definitely underscoring that the girl was a
    pathological liar, that the family members said that
    she lied a lot.  I would not bet my life on it either
    way, but I –. . ., per se, did not think the ghosts --
    I just put them under the umbrella of it was probably

decisions or tactical choices.  Indeed, it is difficult to
imagine any reasonable justification for withholding the reports
of ghost sightings from his own potential expert witness in a
private consultation, when such a disclosure might have led to
the defense's only expert opinion on the case.  It was an
omission, not a strategic decision, and therefore unreasonable.
See Young v. United States, 56 A.3d 1184, 1198 (D.C. 2012)
(trial counsel's decision was not strategic because it "didn't
occur to [him] to" consult with an expert witness (alteration in
original)).

### 2.   LeRoy's Decision, Although Unreasonable, Was Not Prejudicial

LeRoy's omission of the ghost reports in his discussion
with Dr. Begany was not prejudicial.  The potential utility of
Dr. Begany's testimony would have been to undermine M.R.'s
credibility, but LeRoy was already making strategic decisions on
how best to undermine M.R.'s credibility.  Dr. Begany's
testimony would not have changed the trial result.  See supra
II.B.2.

---

I think one of the more normal lies that -- that I was
less concerned about th[a]n the sexualization, the
notes to Mr. Reyes, the leaving school with claims of
being sick on many occasions. I think the ghosts I was
less concerned about that th[a]n these other factors.

App. Vol. III 105.

LeRoy's conduct did not violate Reyes's Sixth Amendment right and therefore this Court DENIES claim II.

### E.   Failure to Sign Habeas Corpus Petition

Rule 2(b)(5) Governing Section 2254 Proceedings requires that the habeas corpus petition be "signed under penalty of perjury by the movant or by a person authorized to sign it for the movant." A person authorized to sign the habeas corpus petition can be the attorney of the petitioner. See, e.g., Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990) (discussing the prerequisites for "next friend" standing in petition for habeas corpus). In the present case, Reyes's attorney, Kathryn Karczewska Ohren, signed the petition on his behalf. Petition 16. The Commonwealth's argument lacks merit and this Court rejects it.

### III. CONCLUSION

The Appeals Court reasonably applied federal law in concluding that LeRoy did not violate Reyes's Sixth Amendment right as to the impeachment methods used during trial or by choosing not to call Dr. Begany as an expert witness. The Appeals Court's conclusion that it was reasonable for LeRoy to withhold important information from his own expert witness was, however, unreasonable. Nevertheless, LeRoy's conduct was not prejudicial. Therefore, this Court DENIES Claim I.

The Appeals Court did unreasonably review the factual record and based its decision on these misconceptions.  After a de novo analysis, this Court rules that LeRoy's impeachment decisions were not unreasonable or prejudicial, and while LeRoy's decision not to inform Dr. Begany about the ghost stories was unreasonable, it was not prejudicial.  Therefore, this Court DENIES Claim II.

**SO ORDERED.**

                                        /s/ Wiliam G. Young
                                        WILLIAM G. YOUNG
                                        DISTRICT JUDGE